Jonathan R. Marshall (SBN# 350631)
**BAILEY GLASSER, LLP**
515 S. Flower St., 18th Floor
Los Angeles, CA 90071
(304) 345-6555
jmarshall@baileyglasser.com

Bart D. Cohen
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELLE MCLAUGHLIN and DAMANY BROWNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REVOLVE GROUP, INC.,<br><br>Defendant. | Case No. 2:26-cv-13033<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Michelle McLaughlin and Damany Browne ("Plaintiffs"), individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendant Revolve Group, Inc. ("Defendant" or "Revolve"). Plaintiffs allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against Revolve for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information and personal financial information ("PII").

2. Revolve failed to comply with industry standards to protect information systems that contain PII. Plaintiffs seek, among other things, orders requiring Revolve to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (hereinafter referred to as the "Data Breach") in the future.

3. Revolve is a retail seller and distributor of clothing and accessories, selling products and services online and in brick and mortar stores.

4. On or around September 11, 2026, certain Revolve's customers' financial information was accessed by cybercriminals.

5. Revolve discovered the data breach on or around September 29, 2026.

6. The PII taken from 180,000 to 1,515,073 customer accounts includes names, credit card numbers, expiration date and the customers' contact information, including address.

7. On or around October 29, 2026, Revolve issued a data breach warning letter to customers affected by the breach.

8. On or around October 29, 2026 Revolve filed Form 8-K with the SEC and stated Revolve investigated the breach and confirmed that an unauthorized party breached their system and obtained the PII. The relevant SEC statement said:

> [Revolve] recently became aware of unauthorized access to certain of its systems. The Company promptly initiated its cyber incident response protocols and confirmed the unauthorized activity was remediated. The Company proceeded to assess and investigate the scope of the incident and to identify and implement enhanced security measures designed to prevent a similar event from occurring. The Company also notified federal law enforcement authorities and engaged leading external cybersecurity experts to assist with the investigation and response efforts. Based on its investigation, the Company believes that an unauthorized actor may have obtained, through automated means, the name, contact information, payment card number and payment card expiration date for certain customers who saved payment information associated with their online shopping account on the Company's e-commerce platform. This incident has not resulted in operational disruption or interrupted service to any customers, and as of the date of this report, the Company does not believe this incident will have a material impact on its business.

9. As a business services provider, Revolve knowingly obtained sensitive PII and had a resulting duty to securely maintain that information in confidence. Plaintiffs and Class Members would not have provided their PII to Revolve if they had known that Revolve would not ensure that it used adequate security measures.

10. Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Revolve's data security policies and practices.

## PARTIES

11. Plaintiff Michelle McLaughlin is a resident of New York City, New York and has been a Revolve customer at various times over the course of the last two years.

12. Plaintiff Damany Browne is a resident of New York City, New York and has been a Revolve customer at various times over the course of the last four years.

13. Defendant Revolve Group, Inc. is a Delaware corporation with its principal place of business at 12889 Moore Street, Cerritos, CA 90703.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(C). There are potentially hundreds of thousands of members in the proposed Class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class are citizens of states different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant operates, conducts, and engages in substantial business in this judicial district.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant's principal place of business is located in this District, and a substantial part of the events and omissions giving rise to this action occurred in this District.

# FACTUAL ALLEGATIONS

## Facts Related to the Data Breach

***Defendant's Business***

17. Revolve is a provider of clothing and accessory products. Its website describes its business, "REVOLVE is the next-generation fashion retailer for Millennial and Generation Z consumers."[1]

18. Revolve further claims, "We know that you care how information about you is used and disclosed, and we appreciate your trust."[2]

19. Revolve's services require its customers to entrust Revolve with their sensitive PII.

20. Revolve asserts that it protects customers' payment information to the "highest levels." Its website states, "REVOLVE is committed to maintaining the highest levels of security and protection against fraud. We stay up-to-date with the latest in security technologies to ensure that your credit card information, contact information and shipping/billing information are confidential and safe."[3]

---

[1] "About Us," https://www.Revolve.com/company.html (last accessed Nov. 4, 2026).

[2] *"*Privacy Policy*,"* https://www.revolve.com/privacypolicy (last accessed Nov. 4, 2026).

[3] "Payment," https://www.revolve.com/payment (last accessed Nov. 4, 2026).

21. Revolve's business model depends on Plaintiffs and Class Members who are willing to trust Revolve to protect their PII. In return, Revolve's customers pay for its services, and Revolve gets access to highly sensitive and valuable PII.

***The Data Breach***

22. On or around September 29, 2026, a third party was reported having taken data[4] from at minimum 180,000 Revolve users up to potentially 1,515,073 Revolve users. The SEC filing

23. The SEC filing stated, "Based on its investigation, the Company believes that an unauthorized actor may have obtained, through automated means, the name, contact information, payment card number and payment card expiration date for certain customers who saved payment information associated with their online shopping account on the Company's e-commerce platform"[5]

24. The Massachusetts Attorney General posted the notice consumers were sent on or about October 29, 2026.[6]

---

[4] SEC Form 8-K, https://www.sec.gov/Archives/edgar/data/1746618/000119312526439022/rvlv-20261029.htm (last accessed Nov. 4, 2026).

[5] *Id.*

[6] https://www.mass.gov/doc/2026-1895-revolve-group-inc/download (last accessed Nov. 4, 2026).

25. The notice letter stated, "We are writing to make you aware of a data security incident that involved your name and address, as well as the card number and expiration date for your payment card(s) ending in <>."[7]

***Revolve's Security Representations***

26. Revolve made promises to keep Plaintiffs' and Class Members' personal information safe. "REVOLVE is committed to maintaining the highest levels of security and protection against fraud. We stay up-to-date with the latest in security technologies to ensure that your credit card information, contact information and shipping/billing information are confidential and safe."[8]

27. Revolve acknowledges collecting PII including "names" and "card number and expiration date for your payment card(s)."[9]

28. Revolve identifies ten circumstances under which it may share PII with third parties. None of those circumstances account for the disclosure of PII to cybercriminals.[10]

29. Revolve's Privacy Notice states, "We know that you care how information about you is used and disclosed, and we appreciate your trust."[11]

---

[7] *Id.*

[8] "Payment," https://www.revolve.com/payment (last accessed Nov. 4, 2026).

[9] https://www.mass.gov/doc/2026-1895-revolve-group-inc/download (last accessed Nov. 4, 2026).

[10] "Privacy Policy," https://www.revolve.com/privacypolicy (last accessed Nov. 4, 2026).

[11] "Privacy Policy," https://www.Revolve.com/trust-center.html (last accessed Nov. 4, 2026).

30. It was foreseeable that Revolve, as a company that maintains PII for business purposes, would be targeted by cyber intruders.

***Revolve Derived a Benefit from its Security Representations***

31. Revolve obtained and stored a massive amount of PII and other sensitive financial information. As a condition of engaging in business services, Revolve required that customers entrust it with highly confidential PII.

32. By obtaining, collecting, using, and deriving a benefit from Plaintiff' and Class Members' PII, Revolve assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff' and Class Members' PII from disclosure.

33. Revolve's security representations further reflect that Revolve knew about its legal obligations. These representations also imposed obligations on Revolve to keep those promises.

34. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiffs and Class Members relied on Revolve to keep this information confidential and securely maintained, and to make only authorized disclosures of their PII.

***PII is Valuable and Subject to Unauthorized Disclosure***

35. Revolve was aware that PII it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

36. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[12] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web."

37. The ramifications of Revolve's failure to keep Plaintiff' and Class Members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

38. Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

39. Revolve knew, or should have known, the importance of safeguarding PII entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. Revolve failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

[12] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Nov. 4, 2026).

**The Data Breach Exposed Plaintiffs and Class Members to Identity Theft and Out-of-Pocket Losses**

40. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

41. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, Revolve's policies and practices with respect to maintaining the security of Plaintiff' and Class Members' PII were reckless, or at the very least, negligent.

42. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of Revolve's misfeasance.

43. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[13]

44. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have suffered and will continue to suffer financial

[13] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/ insights-resources/research/us-ca-true-cost-of-fraud-study (last accessed Nov. 4, 2026).

loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII;

c. lost or diminished value of their PII;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. statutory damages;

g. nominal damages; and

h. the continued and certainly increased risk to their PII, which: (1) remains unencrypted and available for unauthorized third parties to access and abuse; and (2) remains backed up in Revolve's possession and is subject to further unauthorized disclosures so long as Revolve fails to undertake appropriate and adequate measures to protect the PII.

**Revolve Violated FTC Guidelines**

45. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Revolve from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair

practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

46. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[14]

47. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established data security guidelines for businesses.[15] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problem.

48. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[16]

---

[14] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Nov. 4, 2026) ("Start With Security").

[15] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Nov. 4, 2026).

[16] Federal Trade Commission, *Start With Security*, *supra*.

49. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50. Revolve failed to properly implement basic data security practices. Revolve's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51. Revolve was at all times fully aware of its obligation to protect Plaintiffs' and Class Members' PII. Revolve was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff McLaughlin's Experience**

63. Plaintiff Michelle McLaughlin is a resident of New York City, New York and used a Revolve account at various times over the course of the last two years.

64. Revolve obtained Ms. McLaughlin's PII in the course of conducting its regular business operations.

65. At the time of the Data Breach, Revolve retained Ms. McLaughlin's PII.

66. Ms. McLaughlin received a letter from Revolve dated October 29, 2026, reflecting that the Data Breach included her name, address, and the card numbers and expiration dates for two of her payment cards.

67. Since the Data Breach, Ms. McLaughlin has generally experienced an increase in the number of spam texts she receives.

68. Ms. McLaughlin's email software has recently filtered far more spam offers for financial products than she received in the past.

69. Ms. McLaughlin greatly values her privacy and is very careful about sharing her sensitive PII. Ms. McLaughlin diligently protects her PII and takes proactive steps to ensure that her PII is kept safe and secure, and stores any documents containing PII in a safe and secure location. Ms. McLaughlin has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

70. Revolve obtained and continues to maintain Ms. McLaughlin's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

71. The Data Breach has caused Ms. McLaughlin to suffer imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

72. As a result of the Data Breach, Ms. McLaughlin is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

73. Ms. McLaughlin has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Revolve's possession, is protected and safeguarded from future breaches.

**Plaintiff Browne's Experience**

74. Plaintiff Damany Browne is a resident of New York City, New York and used a Revolve account at various times over the course of the last four years.

75. Revolve obtained Mr. Browne's PII in the course of conducting its regular business operations.

76. At the time of the Data Breach, Revolve retained Mr. Browne's PII.

77. Since the Data Breach, Mr. Browne has generally experienced an increase in the number of robocalls he receives.

78. Mr. Browne has also experienced a substantial increase in the spam texts he receives, frequently with offers for scam services.

79. Mr. Browne greatly values his privacy and is very careful about sharing his sensitive PII. Mr. Browne diligently protects his PII and takes proactive steps to ensure that his PII is kept safe and secure, and stores any documents containing PII in a safe and secure location. Mr. Browne has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

80. Revolve obtained and continues to maintain Mr. Browne's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

81. The Data Breach has caused Mr. Browne to suffer imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

82. As a result of the Data Breach, Mr. Browne is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

83. Mr. Browne has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Revolve's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

84. This civil action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of the following class:

> All residents of the United States whose PII was compromised in the Data Breach.

85. Excluded from the Class are Revolve, any entity in which Revolve has a controlling interest, and Revolve's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

86. Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

87. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. The number of individuals whose PII was exposed by

Revolve is at least in the hundreds of thousands. All Class Members' names and addresses are available from Revolve's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

88. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Revolve had a duty to protect the PII of Class Members;

b. Whether Revolve was negligent in collecting and storing Plaintiff' and Class Members' PII;

c. Whether Revolve had duties not to disclose the PII of Class Members to unauthorized third parties;

d. Whether Revolve took reasonable steps and measures to safeguard Plaintiff' and Class Members' PII;

e. Whether Revolve failed to adequately safeguard the PII of Class Members;

f. Whether Revolve failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

g. Whether Revolve adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

h. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Revolve's wrongful conduct;

i. Whether Plaintiffs and Class Members are entitled to restitution because of Revolve's wrongful conduct;

j. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

89. **Typicality:** Plaintiff' claims are typical of those of other Class Members because Plaintiff' PII, like that of every other Class Member, was disclosed by Revolve. Plaintiff' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Revolve's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiffs. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

90. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Revolve to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class.

Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

91. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Revolve has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Revolve's policies challenged herein apply to and affect Class Members uniformly and Plaintiff' challenge of these policies hinges on Revolve's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

92. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Revolve. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

93. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Revolve would necessarily gain an unconscionable advantage in non-class litigation, since Revolve would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

94. The litigation of Plaintiff' claims is manageable. Revolve's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

95. Adequate notice can be given to Class Members directly using information maintained in Revolve's records.

96. Unless a class-wide injunction is issued, Revolve may continue to maintain inadequate security with respect to the PII of Class Members, Revolve may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Revolve may continue to act unlawfully as set forth in this Complaint.

97. Revolve has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**(on behalf of Plaintiffs and the Class)**

98. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

99. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. As Revolve stores vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Revolve's databases, whether by malware or otherwise.

100. PII is highly valuable, and Revolve knew, or should have known, the risk in obtaining, using, handling, emailing, and storing Plaintiff' and Class Members' PII and the importance of exercising reasonable care to those ends.

101. Revolve owed, and continues to owe, a duty of care to Plaintiffs and Class Members to exercise reasonable and due care in obtaining, processing, retaining, securing, safeguarding, deleting, and protecting Plaintiff' and Class Members' PII in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Revolve's security systems to ensure that Plaintiff' and Class Members' PII in Revolve's possession was adequately secured and protected; (b) implementing processes that would

detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

102. Revolve had a common law duty to prevent foreseeable harm to its customers. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Revolve also knew that it was more likely than not Plaintiffs and Class Members would be harmed.

103. It was also foreseeable that Revolve's failure to adequately safeguard their PII in accordance with industry standards for data security would result in the compromise of that PII. Revolve acted with wanton and reckless disregard for the security and confidentiality of Plaintiff' and Class Members' PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII were stored, used, and exchanged, and those in its employ who were responsible for those actions.

104. Revolve owed to Plaintiffs and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Revolve also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is directed at enabling Plaintiffs and Class

Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and take other steps to mitigate the harm caused by the Data Breach.

105. Timely notification was required, appropriate, and necessary so that, among other things, Plaintiffs and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Revolve's misconduct.

106. Revolve owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals who Revolve knew or should have known would suffer injury-in-fact as a result of Revolve's inadequate security protocols. Revolve actively sought and obtained Plaintiffs' and Class Members' PII.

107. Revolve breached the duties it owed to Plaintiffs and Class Members described above and thus was negligent. Revolve breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect Plaintiff' and Class Members' PII; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry

standards; and (d) disclose in a timely fashion that Plaintiff' and the Class Members' PII in Revolve's possession had been or was reasonably believed to have been, stolen or compromised.

108. As a direct and traceable result of Revolve's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered and will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

109. Revolve's breach of its common-law duties to exercise reasonable care and negligence actually and proximately caused Plaintiff' and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Revolve's negligence. Those injuries-in-fact and damages are ongoing, imminent, immediate, and Plaintiffs and Class Members continue to face them.

110. As a direct and proximate result of Revolve's negligence, Plaintiffs and Class Members have been injured as described herein, and are entitled to damages in an amount to be proven at trial. Plaintiffs and Class Members injuries include, but are not limited to, the following:

a. losing the inherent value of their PII;

b. losing the value of the explicit and implicit promises of data security;

c. identity theft and fraud resulting from the theft of their PII;

d. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

e. costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

f. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

111. Plaintiffs and Class Members are also entitled to injunctive relief requiring Revolve to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**SECOND CLAIM FOR RELIEF**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiffs and the Class)**

112. Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

113. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Revolve of failing to use reasonable measures to protect PII.

114. Revolve also had a duty under FTC Act, 15 U.S.C. § 45 to provide adequate computer systems and data security practices to safeguard Plaintiff' and Class Members' PII.

115. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

116. Revolve had a duty to Plaintiffs and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff' and Class Members' PII.

117. Revolve violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Revolve's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on its systems.

118. Revolve breached its duty to Plaintiffs and Class Members under the FTC Act by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff' and Class Members' PII.

119. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

120. But for Revolve's wrongful and negligent breach of duty owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

121. The injury and harm suffered by Plaintiffs and Class Members were the reasonably foreseeable result of Revolve's breach of its duty. Revolve knew or should have known that Revolve was failing to meet its duties and that the breach would cause Plaintiffs and Class Members to suffer the foreseeable harms associated with the exposure of their PII.

122. Revolve's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

123. As a direct and proximate result of Revolve's negligence per se, Plaintiffs and Class Members have suffered harm, including:

a. losing the inherent value of their PII;

b. losing the value of the explicit and implicit promises of data security;

c. identity theft and fraud resulting from the theft of their PII;

d. costs and time associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

e. costs and time associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

f. unreimbursed losses relating to fraudulent charges;

g. losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and

h. other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

124. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

125. Plaintiffs and Class Members are also entitled to injunctive relief requiring Revolve to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(on behalf of Plaintiffs and the Class)**

126. Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

127. Revolve offered goods and services to Plaintiffs and Class Members. Then, Plaintiffs and Class Members accepted Revolve's goods and services and paid for those services. And when Plaintiffs and Class Members paid for the goods and services, they also provided their PII to Revolve.

128. Thus, Plaintiffs and Class Members entered implied contracts with Revolve. And so, each payment for goods and services before and during the Data Breach was made under these mutually agreed-upon implied contracts with Revolve.

129. Under those implied contracts, Revolve agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if their information was compromised or stolen.

130. Plaintiffs and Class Members would not have provided and entrusted their PII to Revolve in the absence of an implied contract.

131. Revolve materially breached the contracts it entered with Plaintiffs and Class Members by:

a. Failing to safeguard and protect the PII of Plaintiffs and Class Members.

b. Failing to promptly notify Plaintiffs and Class Members of the Data Breach and the subsequent exposure and theft of their PII.

c. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement.

d. Failing to ensure the confidentiality and integrity of the electronic PII that Revolve created, maintained, received, and transmitted.

132. The damages sustained by Plaintiffs and Class Members as described above were the direct and proximate result of Revolve’s material breaches of its agreements.

133. Plaintiffs and Class Members performed as required under the relevant agreement, or Revolve’s conduct resulted in the waiver of such performance.

134. All contracts include the covenant of good faith and fair dealing. Thus, all contracts impose on each party a duty of good faith and fair dealing. That duty encompasses the following:

a. The parties must act with honesty in fact in the conduct or transactions concerned.

b. The parties must act with good faith and fair dealing when executing contracts and discharging performance and other duties according to their terms so as to preserve the spirit, and not merely the letter, of the bargain.

c. The parties are mutually obligated to comply with both the substance and form of their contracts.

135. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct is justified. Bad faith may be overt or may consist of inaction. And fair dealing may require more than honesty.

136. In this case, Revolve failed to advise Plaintiffs and Class Members of the Data Breach promptly. In these and other ways, Revolve violated its duty of good faith and fair dealing.

137. Revolve, through numerous material breaches of the implied contracts, injured both Plaintiffs and Class Members and suffered losses and damages as described above, including the fact that they did not get the benefit of the bargain for which they paid.

## FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Class)**

138. Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

139. This claim is pled in the alternative to Plaintiff' claim for breach of implied contract.

140. Plaintiffs and Class Members conferred benefits upon Revolve in the form of payments. In addition, Revolve benefitted from receiving Plaintiff' and Class Members' PII and from its ability to retain and use that information. Such data is used to facilitate both payment and the provision of services.

141. Revolve also understood and appreciated that Plaintiff' and Class Members' PII was private and confidential and its value depended upon Revolve maintaining its privacy and confidentiality.

142. Revolve appreciated or knew of the benefits that it received. Under principles of equity and good conscience, the Court should not allow Revolve to retain the full value of these benefits, specifically, Plaintiff' and Class Members' payments and PII.

143. But for Revolve's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted to Revolve. Further, if Revolve had disclosed that its data security measures were inadequate, Revolve would not have been permitted to continue in operation by regulators and its customers.

144. As a result of Revolve's wrongful conduct as alleged in this Complaint (including, among things, its knowing failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiffs and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII), Revolve has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members. Revolve continues to benefit and profit from its retention and use of the PII while its value to Plaintiffs and Class Members has been diminished.

145. Revolve's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff' and Class Members' PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

146. Under the common law doctrine of unjust enrichment, it is inequitable for Revolve to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class Members in an unfair and unconscionable manner. Revolve's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

147. The benefit conferred upon, received, and enjoyed by Revolve was not conferred officiously or gratuitously, and it would be inequitable and unjust for Revolve to retain the benefit.

148. Revolve is therefore liable to Plaintiffs and Class Members for restitution in the amount of the benefit conferred on Revolve as a result of its wrongful conduct,

including specifically the value to Revolve of the PII that was stolen in the Data Breach and the profits Revolve is receiving from the use of that information.

149. Revolve should be compelled to disgorge into a common fund, for the benefit of Plaintiffs and Class Members, all funds that it unlawfully or inequitably obtained as a result of its misconduct and the resulting Data Breach.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b. for equitable relief enjoining Revolve from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c. for equitable relief compelling Revolve to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 6, 2026

Respectfully submitted,

/s/ *Jonathan R. Marshall*

Jonathan R. Marshall (SBN# 350631)
**BAILEY GLASSER, LLP**
515 S. Flower Street
18th Floor
Los Angeles, CA 90071
(304) 340-2295
jmarshall@baileyglasser.com

Bart D. Cohen
**BAILEY GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com

*Counsel for Plaintiffs and the Proposed Class*